I think it's important for this panel to understand that there are two points in time that are critical in cases such as this one. There's the point in time A when the civil rights victim approaches an attorney seeking to get counsel. Assuming that counsel is obtained, there's generally a long period of time with lots of work and effort and discovery before you get to point B. And point B is settlement. Ninety-eight percent of all these cases settle before, during, or after trial. Evans and its progeny focus on B and the problems that arise from B. Only the dissent in Evans and Bernhardt focus on point A. Congress intended when it enacted the Fees Act to attract competent counsel to represent citizens deprived of their civil rights. That's Evans. How fee waiver settlements at point B attract competent counsel at point A is beyond me. I hope you ask my old friend Tim Coates, the appellee's counsel, how that does further congressional intent. Good. Counsel, let me ask you a question before it gets too far along. And it's a very specific question. In your view, could a client transfer a portion of her civil rights claim, substantive civil rights claim, to you or to anyone else? I don't mean recovery. Just could the person transfer the claim itself? No. Okay. I think that's a tort. In the nature of a tort claim and under California law, you can't do that. Thank you. And finally, I'm still puzzled. This is in the brief that I just, I'm going to repeat it here for the moment. How does the county have standing to come and attack a contract between an attorney and a client when they're not parties to that? I don't understand how the county has the authority to do it or power to do it. I'll reserve unless there are questions. The difficulty, as I see it with your position, is who owned what? And that goes to the question Judge Fernandez was asking you earlier. And you answered. That's a Section 1983 claim. Clearly, can a client transfer a Section 1983 claim and my position is that unless the client can transfer the Section 1988 claim, which is a fee claim, hours times rate, unless the client can transfer that to an attorney, clients aren't going to get attorneys, which is not what Congress intended. Thank you. Mr. Coates. Thank you, Mr. Court. Timothy Coates on behalf of the County of Los Angeles. I think the fundamental problem with Mr. Mitchell's position is that at the end of the day it ends up being that the price of attracting competent counsel is essentially to strip from the client the very essence of the claim itself, the very essence of being a plaintiff in any kind of action, which is the ability to control your participation in the action. It simply cannot be, and this is a good example in this case, where the client wants to end the litigation to avoid going to trial under circumstances where the defendant may well believe it has a 99 percent chance of winning, hence the small amount of money that's offered, cost of defense. But nonetheless, the client has to be dragged through that because the attorney perceives that they need to be paid for their services in an amount over and above what they have in a contingent fee agreement. I mean, the contingent fee agreement is lawful. The problem with this assignment is it is not, and it is not because the nature of the purported assignment is that at the very institution of the attorney-client relationship, it creates essentially an irreconcilable conflict, because it takes from the client control of the litigation. If you're going to pitch it on the attorney-client relationship, then my question to you would be this. Suppose the client chooses to transfer the power to ask the plaintiff to transfer the fee to somebody who is not the attorney. Can the client make that transfer? No. And that's for the second portion that the Court is talking about, substantive Section 1983 law in the nature of a personal injury action. You can't split that either. It is a personal injury action. And I think that's why when we talk in the brief, the way the Supreme Court has always looked at it, it has looked at the attorney's remedies for purposes of the violation itself. If that is true, the relationship you want to talk about between attorney and client is rather irrevelent, isn't it? Because if the client can't transfer it to anybody and attorneys are bodies, then it doesn't matter what the deal is between the attorney and the client. Is that right? Well, I don't think so. It would matter in a case where it was transferred to a third party and the third party was trying to come in. I think it's an additional the fact that it's an attorney here is an additional reason why it couldn't be honored in these circumstances. Well, the thing is, if the client has the power to transfer, does have the power to give away her power to ask for fees, then I begin having a hard time seeing why it's any of your business what's going on between her and her attorney. Because indeed, if she had the power to give the fee power to X, X could foul up your settlement just as easily as the attorney could. So that's no big thing. And from your standpoint, all you care about, since the only thing you'll ever be required to do is pay reasonable attorney's fees, what do you care about the deal between the attorney and the client? I think here, well, the reason in this litigation is you want closure litigation. You want to know when you're dealing with the plaintiff, who you're dealing with, and that you're getting closure. That's a pragmatic consideration. You are correct. If it's a third party case, signing to a third party, not a lawyer, what comes into play is the case law that we talked about, about it being a personal injury cause of action, not assignable. But I do think that certainly applies in this case, Mr. Mitchell is a person. The other argument is an independent argument why the Federal Court couldn't enforce a policy that essentially is an invalid breach of ethics on the part of attorney. It's a separate line, that that would not be valid under California law, because attorneys, a client can have all sorts of relationships with third parties, particularly financial relationships that they can't have with their attorneys. I think that's the thing. I fully understand that. I'm saying why is it any of your business? Well, I'm saying that in terms of applying common law, Federal common law interpreting Section 1988 and what it allows and doesn't allow, that that would – that's not the type of public policy that would be allowed to be enforced through Section 1988. The Federal rules, local rules incorporate the California rules of professional conduct, the ABA rules, and so a Federal court could not be seen to enforce a fee agreement or enforce something in contract – contrary to those rules. That's a separate point. So the Court could sua sponte, I'll tell you, could sua sponte say, I don't like your stinking arrangement with your client, and as a matter of professional pride and professional control, I'm not going to let you have that arrangement without your being involved.  Is that what you're saying? Well, the case of Gilbrook v. City of Westminster has an interesting discussion on that, because it wasn't resolved, but it was raised in that case. There's one of the grounds on which you can – there, an attorney, same thing, tried to assert a claim against a fee, and his client wouldn't sign it over to him. He wanted it to him directly. And one of the arguments raised was that there are interest of justice grounds for denying payment of the fee directly to the attorney, and one of them there was that he did not have a fee agreement at all. The Court said that may be possible. It held in that case that the argument hadn't been preserved. There is case law out there, and I think in our brief what we talk about is when you're looking at common law of Section 1988, whether or not enforcing this particular agreement and giving Mr. Mitchell standing is contrary to the rules of the professional responsibility is a consideration. Like I said, I think it's independent of whether you can assign essentially a personal injury cause of action for Section 1988. I think it's an additional ground. For the same reason, like I said, there are many arrangements a client can have with independent third parties that they can't have with their attorney. Why? Because in that litigation, the attorney has the continuing duty to look out for the client's interest and not their own. And the problem is with this assignment at the outset of the litigation, you have the conflict from day one. So, I mean, I think it can't be enforced on both grounds that it's not assignable and also that it is contrary to the rules of professional responsibility which were expressly adopted in the district court, and I think in this circuit in terms of what they look for for guidance. That's not the sort of thing that I think the Fee Act can be seen as promoting. I also think that generally Mr. Mitchell's suggestion that, you know, you need to end the litigation, I think the Supreme Court has looked at that and said, no, in the long run you want to be able to have the client control it. You want the defendant to know how much totally it's going to pay in settlement, and it's a simple economic determination by a defendant. I mean, there's no mischief in a lump sum settlement. Again, I don't think Mr. Mitchell's disagreement really is that we make settlements in lump sums. It's just the sum in this case is not what he thinks the case is worth. If this were a lump sum settlement of $100,000, I don't think we would be here. Well, in this case, though, the client settles the case with the county. Clear enough, right? Yes. Settled the whole thing, including from a client standpoint, the attorney's fees. Correct. Correct? Correct. So that's all done. And that's the deal the client made with the county, and that's the end of it. Now, if she could have assigned the fee rights to her attorney, that would be a problem. You couldn't settle with her. That's correct. Okay. But if she could assign it to anybody else in the world, and I'll include the attorney in that, the ethical problem, it seems to me, doesn't it come when the attorney tries to squeeze the client and the client says, wait a minute, that's just not a deal? It comes up. That's an illegal contract and you can't bind me. Isn't that right? When the attorney attempts to enforce against the client or when the attorney intervenes to stop the settlement. Right. Especially in this case where the client's indemnifying the county, if I understand correctly. Yes. Again, I have a hard time seeing with the county how the county's oar is in this water of the deal between the attorney and the client. Because to obtain finality litigations, but when you know that you've made the deal, you've made the deal. And Judge Otero understood that, too. Because remember, early on, before the case finally settled, there was a tentative settlement reached. Mr. Mitchell asserts his claim and the county says, wait a minute. We thought we had a settlement. Let's go into Judge Otero and see what's going on here. We want a determination. You know, is this case going to be settled or not? Is he going to be allowed to make the fee claim? And Otero said, look, you know, this case clearly has not settled.  Thank you. I have to take issue with my old friend, Mr. Coates. The client has the ability to settle the merits claim at any time. The attorney can't interfere with that. That's criminal in California. The merits claim belongs to the client and she is entitled to do with it as she wishes. Settle, go to trial, whatever. After that, and only after that, do you begin to deal with the statutory attorney's to attract counsel to handle these cases. I was intrigued by Judge Fernandez's question about transferring the power. Could the client transfer the power to ask for fees to anyone? And Mr. Coates says no. But in this instance, she transferred or attempted to transfer that power to the county, which never exercises the right, of course. So if she can't transfer it to an attorney to get an attorney representing her, how can she transfer it to the county in order to settle her case? And in terms of the assignment, it is the practice of some lawyers to finance litigation pursuant to a bank loan or a loan from third parties in any event. If an attorney cannot obtain the power to ask for fees and then reassign it to a bank, saying, look, we've got some risk here that there won't be a prevailing party, but I've got to live for the next five years while we litigate this case, this panel, if it were to decide that the power could not be transferred, would preclude any sort of arrangement like that. And finally, the county argues that the assignment's a violation of one's ethical duty. The reply brief at page 17 cites to a COPRAC opinion that, it is pretty well reasoned, that such an assignment is not a violation of any ethical duty of a California lawyer. Thank you. Okay. We thank counsel for your argument.
judges: Farris, Fernandez, Bybee